# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| NETWORK MONITORING LLC, | § § | Case No. 2:21-cv-00148-JRG |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| SKYSCANNER LTD., | § § | |
| Defendant. | § § § | |

# PLAINTIFF NETWORK MONITORING LLC'S
# REPLY CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

**Page(s)**

A.     DISPUTED TERMS ................................................................................................. 1

      i.     **"ordered combination" (Claims 1 and 6 of the '416 Patent and Claims 1 and 17 of the '946 Patent)** ................................................. 1

      ii.     **"an original URL" (Claims 1 and 6 of the '416 Patent and Claims 1 and 17 of the '946 Patent)** ......................................................... 3

      iii.     **"[[at least one]] a rewritten URL" / "the rewritten URL" / the rewritten embedded URL[[s]]" / "[[Each of ]] the rewritten embedded URL[[s]]" (Claims 1 and 6 of the '416 Patent and Claims 1 and 17 of the '946 Patent)** ......................................................... 5

      iv.     **"form[ing] parameter data based upon predetermined selection parameters from the database" (Claims 1 and 6 of the '416 Patent and Claims 1 and 17 of the '946 Patent)** ....................... 6

      v.     **"dynamically maintain[ing] the predetermined selection parameters based upon revisable, operator-defined instructions on how to select and extract information from a text page; and analyzing the parameter data sets to predict future user activity" (Claims 5 and 10 of the '416 Patent)** .......................................................... 8

      vi.     **"[[the]] a response" / "[[a]] the response" / "embedding the rewritten URLs in [[the]] a response" / "receiving [[a]] the response from Web server" / "forwarding the response to the user browser" (Claims 1, 2, 6, and 7 of the '416 Patent and Claims 1, 10, 17, and 25 of the '946 Patent)** ...................................... 8

      vii.     **"provide profiling and analysis of at least one session" (Claims 1 and 17 of the '946 Patent)** ......................................................... 9

      viii.     **"3. The method of claim 1, where the causing the Web page specified by the Web server URL to be returned to the user comprises redirecting the user browser to the Web page on the Web browser" / "8. The apparatus of claim 6, where the apparatus causes the Web page specified by the Web server URL . . ." / "11. The apparatus of claim 1, where the apparatus causes the Web page specified by the Web server URL . . ." / The method of claim 17, wherein the Web page specified by the Web server URL . . ." (Claims of the '3 and 8 of the '416 Patent and Claims 11 and 26 of the '946 Patent)** ...................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altiris, Inc. v. Symantec Corp.*,
 318 F.3d 1363 (Fed. Cir. 2003) ................................................................................. 1, 3

*Cont'l Circuits LLC v. Intel Corp.*,
 915 F.3d 788 (Fed. Cir. 2019) ....................................................................................... 4

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
 256 F.3d 1323 (Fed. Cir. 2001) ..................................................................................... 2

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
 424 F.3d 1374 (Fed.Cir.2005) ....................................................................................... 6

*Lexington Luminance LLC v. Amazon.com Inc.*,
 601 Fed. Appx. 963 (Fed. Cir. 2015) ............................................................................ 7

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
 358 F.3d 898 (Fed. Cir. 2004) ....................................................................................... 4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
 572 U.S. 898 (2014) ...................................................................................................... 7

*Superguide Corp. v. DirecTV Enters., Inc.*,
 358 F.3d 870 (Fed. Cir. 2004) ................................................................................. 3, 10

Plaintiff Network Monitoring LLC ("Network Monitoring") hereby submits its Reply Claim Construction Brief.

## A. DISPUTED TERMS

### i. "ordered combination" (Claims 1 and 6 of the '416 Patent and Claims 1 and 17 of the '946 Patent)

Skyscanner does not appear to dispute that the Asserted Patents do not include any direct or explicit requirement for an ordered combination of steps. Nor does Skyscanner address that Claim 6 of the '416 Patent and claim 1 of the '946 Patent are systems claims, not methods, and cannot be subject to any sequence requirement. Instead, Skyscanner wrongly asserts that there is some "implicit" requirement for its requirement that every claim element occur in the sequence recited. But Skyscanner fails to show that either the "logic or grammar" of the claims or the specification implicitly impose any such requirement. *See Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369–70 (Fed. Cir. 2003). Its construction should therefore be rejected.

The logic and grammar of the claims does not create an implicit requirement for an ordered combination of steps. Skyscanner's argument amounts to a recitation of the claimed steps without any substantive analysis. For example, Skyscanner conclusorily argues that "providing the user browser with a Web Page containing a URL specifying both an address of the tracking system and information that specifies a URL on the Web Server" is a pre-condition to "determining a Web server URL from the web page request." To the contrary, the claim language explicitly requires that "Determining a Web server URL" occurs ***"upon receipt by the tracking system of a web page request from the user browser*.*"* Neither grammar nor logic preclude determination of "a Web server URL from the Web page request" before or at the same time as the browser receives a "Web Page containing a URL specifying both an address of the tracking system and information that specifies a URL on the Web server." Indeed, logically, a request by a browser ***to a tracking system***

1

upon which a Web server URL is determined may occur before "information specifying a URL *on the web server*" is provided to that browser. Skyscanner advances similarly conclusory arguments for other steps and fails to offer *any* rationale precluding overlapping or simultaneous operation. There is no logical or grammatical basis for imposing a sequence requirement.

Skyscanner also fails to show why *every* limitation must occur in the order recited, only specifically arguing that certain terms must occur before or after others. For example, Skyscanner argues that "encoding an original URL" must occur after "providing the user browser with a Web page containing a URL," without addressing why encoding the URL would need to occur after any of the three intervening limitations.[1] Skyscanner similarly argues that "causing the Web page specified by the Web server URL to be returned to the user browser" must occur after "determining a Web server URL," without addressing four intervening limitations. Even if logic or grammar created some ordered combination requirement (they do not), construction is unsupported.

Skyscanner's argument that antecedent basis of the claim terms implies a required sequence is also unavailing. Under Skyscanner's rationale, the grammatical requirement for proper antecedent basis would effectively establish a presumption that claim elements occur in the recited sequence. There is no such presumption. *See Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001).

Finally, there is no implicit requirement for any order of steps required by the specification. Skyscanner improperly suggests that the scope of the claims is limited to specification embodiments, and baselessly asserts that the embodiment requires steps to occur in the order

---

[1] Skyscanner's argument here further cuts against its argument that an "original URL" is the same thing as the URL provided to the user browser. Requiring that Skyscanner's proposed "original URL" be "encoded" only after it is provided makes little sense, and is certainly not supported by the logic or grammar of the claims.

recited by the specification. Even if disclosed embodiments did recite an ordered combination (they do not), Skyscanner's proposal would improperly limit the claims to the scope of a narrower embodiment. *See Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004); *see also Altiris,* 318 F.3d at 1371 (holding that it was improper to read an order of steps embodiment into method claims because the specification "nowhere [included] any disclaimer of any other order of steps, or any prosecution history indicating a surrender of any other order of steps.") In any case, Skyscanner's identification of an exemplary "logical workflow" related to Fig. 2 does not amount to an ordered combination, let alone lexicography. Dkt. 30 ("Resp.") at 8.

Accordingly, the Court should reject Skyscanner's ordered combination construction.

### ii. "an original URL" (Claims 1 and 6 of the '416 Patent and Claims 1 and 17 of the '946 Patent)

Skyscanner does not, and cannot, identify any lexicography or disclaimer supporting its attempt to limit the term "original" to "embedded in the response to the Web page request from the user browser." The claims plainly recite "encoding an ***original URL*** as part of the tracking system URL path to construct at least one rewritten URL," and it would be clear to both a lay juror and a POSITA that "original" is recited with its plain meaning as a descriptor of the type of URL encoded "as part of the tracking system URL path." Skyscanner's argument that "original" cannot refer to any given URL encoded as part of the tracking system is an improper attempt to create a non-infringement position, and is unsupported by the claims or intrinsic record.

Skyscanner's construction is apparently intended to create non-infringement positions requiring that a tracking system (1) have already "previously written" the original URL, *and* (2) limiting the "original URL" embedded links within a web page (*e.g.* hyperlinks or images), as opposed to URLs of a web page as a whole. *See* Resp. at 9-11. Neither the intrinsic record nor the language of Skyscanner's own proposed construction justify such narrowing. Skyscanner's

3

arguments to the contrary are both irrelevant and incorrect. For example, in suggesting that an "original URL" must be embedded in a Web page, Skyscanner uses wordplay for the false premise that an original URL must be "previously written." Skyscanner ignores that the claims do not even require an "original URL" to itself be "rewritten," instead reciting that the original URL is "encoded . . . as part of the tracking system URL path to construct at least one rewritten URL." In any case, it does not follow that any "previously written" URL must be embedded in a webpage (and not of a webpage), as Skyscanner suggests. Skyscanner also improperly relies on specification disclosure regarding "URLs embedded in the HTML code," baselessly treating that disclosure as lexicography regarding an "original URL."

Skyscanner also wrongly assumes the specification's use of the term "present invention" limits claim scope to a "proxy-based system." Resp. at 9. Skyscanner improperly relies on this assumption throughout its argument in an attempt to limit an "original URL" to one "embedded in original web page response received from the Web site." *Id.* at 10. But the patents use the term "present invention" on an exemplary basis to refer to numerous different embodiments. *See e.g.* Ex. A at 3:34-4:15. Whether or not such embodiments are proxy-based systems, there are no "words or expressions of manifest exclusion or restriction" that limit the claimed invention to any embodiment. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004); *see also Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019) (expressly rejecting that the claims of the patent must be construed as being limited to a preferred embodiment). This error is fatal to Skyscanner's construction, and it should be rejected on this basis.

Finally, Skyscanner's suggestion that its construction is somehow necessary to avoid "prior art 'affiliate networks'" that do not use a proxy-based system" is based on pure attorney argument, and relies on the same improper assumption that the Asserted Claims are limited to proxy-based

4

systems refuted above. Skyscanner's arguments that the Asserted Claims are invalid over cited prior art is no basis for limiting claim scope, particularly in the absence of any prosecution disclaimer or disavowal by the patentee.

Accordingly, the term "original URL" should be given its plain and ordinary meaning.

### iii. "[[at least one]] a rewritten URL" / "the rewritten URL" / the rewritten embedded URL[[s]]" / "[[Each of ]] the rewritten embedded URL[[s]]" (Claims 1 and 6 of the '416 Patent and Claims 1 and 17 of the '946 Patent)

Skyscanner fails to identify any lexicography or disclaimer justifying its narrowing construction or "rewritten URL" as "[a / the] URL replacing the URL embedded in the response to the Web page request from the user browser." Nor does Skyscanner substantively address this term separately from the term "original URL"– its construction is also improper for the same reasons discussed above.

Instead, Skyscanner improperly assumes that the specification is limiting, and relies on disclosure that "the URL-proxy is able to intercept further requests initiated by the browser as a result of the user clicking on hyperlinks that reference the rewritten URLs" for the nonsensical conclusion that a "rewritten URL" is the "URL replacing the 'original URL' in the Web page response before it is sent to the user browser." Resp. at 12-13 (citing Ex. A at 6:25-31). This is wrong on several levels. First, there is no basis to read the specification as limiting. Second, the claim language recites that an "original URL" is encoded "as part of the tracking system URL path to construct at least one rewritten URL," not that the "original URL" is necessarily rewritten itself. Finally, it does not follow from the cited disclosure that an "original URL" must be embedded in a web page response, even if it were read to somehow limit the claims (which it does not).

Skyscanner also attempts to rely on an IEEE dictionary for a definition of "rewritten URL." But there is no basis for looking to extrinsic evidence, nor is that definition even consistent with Skyscanner's proposed construction.

This term should be given its plain and ordinary meaning.

### iv. "form[ing] parameter data based upon predetermined selection parameters from the database" (Claims 1 and 6 of the '416 Patent and Claims 1 and 17 of the '946 Patent)

This term is definite, and Skyscanner's position should be rejected. Skyscanner fails to articulate any ambiguity on the face of this term, let alone to meet its burden to show by clear and convincing evidence that a POSITA would find it indefinite despite detailed specification teachings and Dr. Kia's unrebutted opinion. Moreover, Skyscanner improperly conflates any absence of lexicography with indefiniteness. *See Invitrogen Corp. v. Biocrest Mfg., L.P.,* 424 F.3d 1374, 1384 (Fed.Cir.2005) ("[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.")

Skyscanner's indefiniteness argument is limited to the term "predetermined selection parameter." Skyscanner does not advance any argument that the words "predetermined parameter" alone is indefinite. Instead, Skyscanner asserts that the addition of the prefix "selection" somehow renders the term ambiguous. Resp. at 14. But the context of the claim language itself, reciting "identifying and extracting captured information indicating that the user browser has requested the Web server URL, the captured information stored within a database; [and] form[ing] parameter data based upon ***predetermined selection parameters*** from the database" makes the scope of "predetermined selection parameters" reasonably certain to a POSITA.

The specification also provides detailed discussion of selection parameters that would provide guidance to a POSITA. *See* Ex. C, ¶¶ 38-41. As Dr. Kia explains, it is readily apparent that exemplary parameters taught in the specification (*e.g.* "user-defined parameters" and "referral parameters") are forms of selection parameter. *Id*. The specification also discloses exemplary embodiments in which parameter data (*e.g.* recorded event types and session data) is formed based on those selection parameters (*e.g.* "user-defined parameters"), as recited in the claims. *See e.g.*

6

Ex. A at 6:60-6:66 ("In its preferred embodiment, the URL-proxy records referral parameters along with the HTTP-transmission by encoding the parameters within the rewritten URL. Referral parameters are user-defined parameters that may be used to logically group and query report data. The URL-proxy preferably records and associates the following referral parameter with an HTTP transmission . . . ."); *id.* at 10:26-10:32 ("A parse method object **306** represents an algorithm and algorithm parameters for extracting attributes from a logged-page record. . . . A parse-attribute object **308** represents the set of attributes that result from the application of a parse-method to an identified-page record.") Yet under Skyscanner's rationale, that detailed discussion nonsensically *adds* ambiguity to the term merely because the specification exemplifies selection parameters using other prefixes. To the contrary, "in assessing definiteness, claims are to be read in light of the patent's specification and prosecution history." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 908, (2014); *see also Lexington Luminance LLC v. Amazon.com Inc.*, 601 Fed. Appx. 963, 969 (Fed. Cir. 2015) ("The intrinsic record is reasonably definite in indicating what the claim covers because the specification lays out a considerable list of exemplary substrates that correspond to the materials specified in the claim . . . .") Accordingly, the specification would reinforce a POSITA's reasonably certain understanding of this term.

Finally, Skyscanner does not substantively address Dr. Kia's reasoning, instead simply rehashing its arguments. Skyscanner simply ignores Dr. Kia's reasoned opinions that a POSITA recognize various embodiments of "parameter" as "selection parameters," reinforcing their understanding of this term. This term is definite, and Defendant's position should be rejected.

v. **"dynamically maintain[ing] the predetermined selection parameters based upon revisable, operator-defined instructions on how to select and extract information from a text page; and analyzing the parameter data sets to predict future user activity" (Claims 5 and 10 of the '416 Patent)**

Skyscanner's arguments regarding this term are limited to the "predetermined selection parameters" addressed above. This term is definite for the same reasons.

vi. **"[[the]] a response" / "[[a]] the response" / "embedding the rewritten URLs in [[the]] a response" / "receiving [[a]] the response from Web server" / "forwarding the response to the user browser" (Claims 1, 2, 6, and 7 of the '416 Patent and Claims 1, 10, 17, and 25 of the '946 Patent)**

These terms should be given its plain and ordinary meaning. Skyscanner fails to identify any lexicography or disclaimer to justify any narrowing of these terms. Nor does Skyscanner advance any support for requiring a response directly to or from the browser, as opposed to via, for example, intermediaries or proxies. Skyscanner also fails to address that its proposed construction adds superfluous language, and would confuse whether a given response must be to or from the browser. Skyscanner instead argues that a certificate of correction to the antecedent bases of "a/the" response in claims 6 and 7 of the '416 Patent somehow limits every "response" to "the response to the Web page request from user browser." Skyscanner's argument is nonsensical and does not justify Skyscanner's proposed construction.

Instead, Skyscanner wrongly argues that these terms should be limited because the term "embedding the rewritten URLs in *[a] response* such that a browser request to each of the rewritten embedded URLs is sent to the tracking system" in claim 6 of the '416 Patent provides the antecedent basis for the term "receiving [the] response from the web server."[2] But the fact that claim 7 requires that a response "such that a browser request to each of the rewritten embedded

---

[2] Skyscanner nonsensically suggests that the "only response it could receive from the Web server would be a response without any rewritten URL," despite the fact that claim 6 plainly recites a response with an embedded rewritten URL. Resp. at 16.

8

URLs is sent to the tracking system" be received from the Web Server does somehow impose that requirement on every instance of the term "response" across the patents. Rather, claim differentiation suggests that the "response" recited in claim 6 does *not* need to be "received from the Web server" as recited in claim 7. There is also no reason why the antecedent basis for the term "response" in 7 of the '416 patent would limit any other claim. Skyscanner's construction should be rejected, and these terms should be given their plain and ordinary meaning.

### vii. "provide profiling and analysis of at least one session" (Claims 1 and 17 of the '946 Patent)

Skyscanner's indefiniteness arguments regarding this term are limited to the word "analysis." Skyscanner does not appear to contest the remainder of this term is definite.

At the outset, the scope of the word "analysis" is clear, whether to a POSITA or a lay juror. Skyscanner does not meaningfully dispute that. *See* Resp. at 17. Instead, despite acknowledging that the specification teaches several forms of "analysis," Skyscanner suggests that the term analysis must denote "what 'analysis' is done" to avoid indefiniteness. In essence, Skyscanner improperly assumes that "analysis" must be limited to as single specification embodiment (*e.g.* "event analysis" or "session analysis"), and asserts that the term is indefinite if it does not pick one or the other. *See id.*. This argument goes to the breadth of the term "analysis," not its definiteness. The fact that Skyscanner would prefer that the term be narrower is no basis for indefiniteness.

Even if there were some ambiguity in the word "analysis" (there is not), the specification provides ample guidance that would reinforce a POSITA's understanding, as Dr. Kia explains. Ex. C, ¶¶ 51-60. Skyscanner's assertion that providing multiple examples of "analysis" somehow renders it indefinite is baseless. This term is definite, and Skyscanner's position should be rejected.

- viii. **"3. The method of claim 1, where the causing the Web page specified by the Web server URL to be returned to the user comprises redirecting the user browser to the Web page on the Web browser" / "8. The apparatus of claim 6, where the apparatus causes the Web page specified by the Web server URL . . ." / "11. The apparatus of claim 1, where the apparatus causes the Web page specified by the Web server URL . . ." / The method of claim 17, wherein the Web page specified by the Web server URL . . ." (Claims of the '3 and 8 of the '416 Patent and Claims 11 and 26 of the '946 Patent)**

Skyscanner's proposed construction is an improper attempt to limit the scope of the claims to Skyscanner's mischaracterization of specification embodiments. *See Superguide*, 358 F.3d at 875 ("[A] particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment.") Skyscanner attempts to justify this improper construction by arguing that "a second request to the tracking system" is necessary to distinguish the invention from prior art. Dkt. 30. But Skyscanner's attorney argument regarding the scope of conventional systems, and its tacit assumption that the intrinsic record invalidates the claims as written, is no basis for narrowing the claims. Moreover, as the dependent claim terms at issue descend from valid independent parent claims, Skyscanner fails to explain why it would be necessary to distinguish limitations of dependent claims from conventional techniques *even if* the dependent limitations at issue were not distinguishable from conventional redirect techniques.

Skyscanner also wrongly assumes the specification's use of the term "present invention" limits claim scope to a "proxy-based tracking system." Resp. at 20. It does not. As discussed above, *supra* Section ii, the patent uses the term "present invention" on an exemplary basis, and there is no basis for liming claim scope to any disclosed embodiment. Moreover, Skyscanner's assertion that a non-proxy-based system "would not be able to 'embed the rewritten URLs in the response" is pure attorney argument, and is not a basis for limiting claim scope.

Accordingly, these terms should be given their plain and ordinary meaning.

Dated: April 27, 2022                                      Respectfully submitted,

  /s/ *Vincent J. Rubino, III*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue, Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Justin Kurt Truelove
Texas Bar No. 24013653
Email: kurt@truelovelawfirm.com
**TRUELOVE LAW FIRM, PLLC**
100 West Houston Street
Marshall, Texas 75670
Telephone: (903) 938-8321
Facsimile: (903) 215-8510

***ATTORNEYS FOR PLAINTIFF
NETWORK MONITORING LLC***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 27, 2022, a true and correct copy of the above and foregoing document has been served on counsel of record via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/*Vincent J. Rubino, III*
Vincent J. Rubino, III